Assigned Estate of Edward Hogan and Nancy Hogan. Appeal of Daniel Hogan et al.

*Assignment for creditors—Fraud—General creditors—Judgment creditors.*

In the distribution of an estate assigned for the benefit of creditors, a general creditor, whose right to participate in the fund or property has been established, may be heard to charge fraud against a judgment creditor.

In the distribution of an estate assigned for the benefit of creditors, lien creditors whose liens date prior to judgments alleged to be fraudulent are not such interested parties as can be heard to contest the rights of the judgment creditors whose judgments are alleged to be fraudulent.

*Married women—Judgment—Record.*

A judgment against a married woman regular on its face, and not showing for what it was obtained, will not be stricken off upon the allegation that it was for necessaries for which the husband was primarily liable.

*Mortgage—Alteration—Filling up blanks—Delivery.*

Where a bond and mortgage by husband and wife is acknowledged and delivered to the mortgagee with the amount and time of payment blank, which blanks are afterwards filled in the presence of the wife whose property is the security for the mortgage, no one is prejudiced thereby, and there is, in fact, no alteration of the instrument.

*Judgment—Collateral attack—Assignment for creditors.*

In the distribution of an estate assigned for the benefit of creditors, a judgment entered upon a bond executed by one of the assignors cannot be attacked, where there is no allegation of fraud.

In distributing an estate assigned for the benefit of creditors the auditor has a right, at the instance of the creditors, to enter into an investigation of the bona fides of a judgment, and to determine whether or not it was collusive and given to cheat, defraud, hinder or delay creditors.

Argued March 15, 1897. Appeal, No. 590, Jan. T., 1896, by plaintiffs, from order of C. P. Clinton Co., dismissing exceptions to auditor's report. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Exceptions to auditor's report.

Edward Hogan and Nancy Hogan, his wife, made a deed of general assignment, on May 20, 1892, for the benefit of creditors. A partial account of the assignee was filed and confirmed, when George A. Brown, Esq., was appointed auditor to distribute this fund. Subsequently, and before the audit, the assignee sold the remainder of the property, and the entire fund, viz. : $10,513.58, was distributed by the auditor, in the following report :

Edward Hogan and Nancy Hogan are husband and wife. They formerly and for a great many years lived in Renovo, Penna., where they accumulated considerable property—consisting entirely of real estate, excepting the household goods and furniture of the family. The proceeds of the sale of this real estate comprise the fund now for distribution. The legal title to this real estate was taken in the name of Nancy Hogan, the wife, with the exception of one property. This merely happened so. There was no reason for it particularly. At the time of the several purchases Edward Hogan was solvent, and his money or earnings paid for all the property purchased in Renovo. He was a contractor or mechanic, principally employed by the Pennsylvania Railroad Company. By virtue of this employment he was continually away from his home and had little of the oversight of his property. On this account, as well as for other reasons, probably, the entire management and care of the family and property fell to the lot of Nancy Hogan. It is a fact fully established, and so found by the auditor, that on this account Nancy Hogan became the purchasing agent of that family. She looked after all the property, made all contracts for repairs, contracted all bills, whether for necessaries or otherwise, and it is possible, became the head of the family in all respects. Having been given full sweep to contract debts, she appears to have exhausted her credit in Renovo and the family moved to Lock Haven. What was commenced or started in

Renovo came to a sorry end in Lock Haven, where her mania for running bills, brought about the assignment for the benefit of creditors on December, 20 1892. . . . The Hogans owned four distinct lots of ground in the borough of Renovo, Clinton county, Penna., as follows : lot No. 17 in block 5, was owned and sold as the property of Edward Hogan. It was sold to John Smith on September 6, 1893, for the price of $2,575. Lot No. 15 in block 18, was owned by Nancy Hogan. It was sold to Wm. H. Nicholas on September 6, 1893, for the price of $1,575. Lot No. 3 in block 6, was owned by Nancy Hogan. It was sold to Elizabeth Schrœder on October 1, 1894, for the price of $2,500. Lot No. 1, in block 19, was owned by Nancy Hogan. It was sold to Daniel K. Hogan on                        for the price of $3,020.

By agreement of all parties the entire proceeds of the sales of these several properties are to be distributed as if the assignee had filed his accounts therefor and the same had been confirmed by the court. By the account of S. M. McCormick, assignee, filed December 10, 1894, and confirmed January 17, 1895, there is a balance due for distribution of $3,593.21. This amount was realized from the rents of all the properties, and from the sale of lot No. 17, in block 5, to John Smith, and lot No. 15 in block 18, to Wm. H. Nicholas.

The following mortgages and judgments were liens upon their real estate at the time of the assignment.

| | |
|---|---|
| ELIZABETH SCHRŒDER, | Judg't No. 55, Jan. term, 1889. |
| v. | Judgment, $1,000.00. |
| EDWARD HOGAN and | Int. from Oct. 17, 1888, |
| NANCY HOGAN. | Attorney's commission, $50.00. |
| | Entered Oct. 18, 1888, |
| | Costs, $13.90. |
| NANCY AND EDWARD | Mortgage dated April 5, 1889. |
| HOGAN | Real debt, $2,800.00. |
| To | Interest from April 5, 1889. |
| ELIZABETH SCHRŒDER. | One lot, No. 1, block 19. |
| | Recorded April 16, 1889, in mort. book P., page 42. |

On the bond accompanying this mortgage a judgment was entered as follows :

ELIZABETH SCHRŒDER,
v.
NANCY HOGAN and
EDWARD HOGAN

⎰ No. 61, September term, 1895.
⎱   Face of bond,       $1,800.00.
Excess of interest in-
  cluded in bond, 1 yr.
  at 10 per cent.  $72.
One year int. at 10
  per ct. on judg-
  ment,               100. $172.00.
Real amt. of judgm't, $1,628.00.

Interest from April 5, 1890.   Atty's and com. $91.40.   Costs $43.15.

The mortgage stated above was to secure the sum of $1,800, and as collateral for the payment of the judgment for $1.000. It was admitted that interest was included for one year at 10 per cent on the judgment and on the debt in the mortgage of $1,800.

NANCY and EDWARD
HOGAN
To
JAMES A. WENSEL.

Mortgage dated Dec. 19, 1891.
            Real debt, $500.00.
Interest from Dec. 19, 1891.
On lot No. 1, block 19; lot No. 3
  in block 6, and lot No. 17 in
  block 5.
Recorded December 21, 1891,
  in mortgage book Q, p. 151.

NANCY and EDWARD
HOGAN
To
JOHN A. ANDERSON.

Mortgage dated Mar. 24, 1892.
            Real debt $800.00.
Interest from Mar. 24, 1892.
On lot No. 1, block 19, lot
  No. 17, block 5, and lot No. 3
  in block 6.
Recorded April 1, 1892, in
  mortgage book Q, page 171.

Judgment was entered on the bond accompanying the above mortgage, as follows:

JOHN A. ANDERSON use of
COLEMAN GRUGAN
v.
EDWARD HOGAN and
NANCY HOGAN.

No. 123, May term, 1892.·
        Judgment, $1,600.00.
Interest from Mar. 24,
  1892.  Costs,          4.75.
Attorney's commission, 80.00.
Entered April 16, 1892.
Dec. 3, 1892, paid $32 interest.

GEORGE S. GOOD
v.
NANCY HOGAN and
EDWARD HOGAN.

No. 36, Sept. term; 1892.
    Judgment,       $230.00.
Interest from Mar. 3,
1892.  Costs,        7.90.
Entered May 23, 1892.

NANCY and EDWARD
HOGAN
To
COLEMAN GRUGAN.

Mortgage dated June 2, 1892.
        Real debt, $400.00.
Int. from June 2, 1892.
On lot No. 17, block 5; lot No. 1
    in block 19, and lot No. 3 in
    block 6.
Recorded June 2, 1892, in mort-
    gage book Q, page 187.

DANIEL K. HOGAN
v.
EDWARD HOGAN and
NANCY HOGAN.

No. 97, January term, 1893.
        Judgment, $400.00.
Int. from Dec. 2, 1892.
        Costs, 5.00.
Attorney's commission, 20.00.
Entered December 5, 1892.

GEO. J. KOSER use of
JOHN T. KANE, cashier,
v.
MRS. ED. HOGAN.

No. 111, January term, 1893.
        Judgment, $247.77.
Int. from Dec. 23, 1892.
        Costs,        .25.
Attorney's commission, 25.00.
Entered Dec. 10, 1892.

January 11, 1893.   The above judgment assigned to Daniel
Hogan.  $25.81 costs and $249.19 applied to judgment out of
sheriff's sale of defendant's personal property.

EDWARD GALLAGHER
and DANIEL HOGAN
v.
E. HOGAN and NANCY
HOGAN.

No. 117, January term, 1893.
        Judgment, $2,500.00.
Int. from Dec. 12, 1892.
        Costs,       7.50.
Atty's commission,      125.00.
Entered Dec. 12, 1892.

JOHN P. ANTHONY
v.
MRS. NANCY HOGAN.

No. 118, January term, 1893.
        Judgment, $20.11.
Int. from Dec. 13, 1892.
        Costs,       2.00.
Atty's commission,       1.04.
Entered Dec. 13, 1892.

NANCY AND EDWARD
HOGAN
To
S. M. McCORMICK.

{ Mortgage dated Dec. 19, 1892.
Real debt, $530.00.
Int. from Dec. 19, 1892.
On lot No. 1, block 19, lot No. 3,
block 6, and lot No. 17,
block 5.
Recorded December 19, 1892,
in mortgage book O, page— }

The following judgments entered after the assignment were also presented and proved before the auditor. (To some few of the accounts verified by affidavit objection was made by the attorney of Nancy Hogan because the books of claimants were not produced in evidence. Other accounts represented by that attorney and in exactly the same shape were presented and admitted without objection. The accounts were not denied by Nancy Hogan, but in most of the cases the dealings were acknowledged and the auditor will allow all of such claims, because if the strict rule of evidence is to be applied to one account it must apply to all.)

| | |
|---|---:|
| Holloway Bottling Company | $ 46.20 |
| Geo. J. Koser | 66.80 |
| W. M. Fredericks | 255.00 |
| Dietz Brothers | 97.50 |
| A. H. Heilman & Co. | 36.35 |
| Edward Hecht | 59.22 |
| P. P. Rittman | 153.25 |
| P. P. Rittman, balance | 65.51 |
| P. P. Rittman | 86.45 |
| A. Simon's Sons | 68.31 |
| Everett & Co. | 631.63 |
| Daniel Glace | 32.00 |
| J. N. Sloan & Co., Judgment before alderman | 16.85 |
| E. F. Hall | 46.50 |

[There was a large number of claims not reduced to judgment proved and allowed by the auditor.]

When the evidence had been closed, and before argument was begun, the following objections and answer thereto were made:

C. S. McCormick on behalf of Daniel K. Hogan objects to the mortgage of Elizabeth Schrœder for the following reasons :

1. Because the mortgage upon its face shows that the words " Thirty-six hundred dollars " down to " semi-annually," were entered by a different hand and a different person from the balance of the mortgage.

2. The face of the mortgage, together with the evidence of Jas. H. Ferguson and W. F. Schrœder shows that the words from " Thirty-six hundred dollars " to " semi-annually " were written in the mortgage (which was acknowledged in Renovo), in Lock Haven, in the absence of Edward Hogan, one of the makers of the mortgage, there being no evidence that he consented to the writing of the said words in the said mortgage.

3. In the 11th line from the bottom of the first page " een " are erased and the word " twenty " in a different handwriting inserted, making the line to read " Twenty-eight hundred," instead of eighteen hundred.

4. Because there is inserted in the mortgage as secured by it, these words " and this mortgage further collaterally secures judgment note of one thousand dollars, payable October 17, 1890, with interest, payable semi-annually," which words are in the handwriting of W. F. Schrœder, and by his testimony, written in the presence of Elizabeth Schrœder, and there is no consent or agreement shown on the part of Edward Hogan that the mortgage should be made to cover the judgment note therein recited.

To this objection H. T. Harvey, Esq., replies as follows :

The objection just made by counsel, on behalf of his clients, is without legal right, as the parties objecting have no legal status or right to object to the mortgage given by Edward Hogan and Nancy Hogan to Elizabeth Schrœder. . . .

T. C. Hipple, Esq., attorney for the administrator of Coleman Grugan, deceased, . . . . renews his objection to the competency of Edward Hogan as a witness against any of said claims, said Coleman Grugan being dead. Also to his competency to attack any of said claims in the manner apparently proposed. And also to the legal right and competency of other creditors of Nancy and Edward Hogan to attack and object to the same.

H. T. Harvey, Esq., attorney for the Holloway Bottling Co., W. K. Chestnutt and C. S. McNerney, unsecured creditors and

for S. M. McCormick (with T. C. Hipple, Esq.) and Elizabeth Schrœder, object to judgments of Daniel K. Hogan and Edward Gallagher, No. 117, January term, 1893, for $2,500. (1) Because it appears from the evidence that the judgment No. 97, January term, 1893, was included in the amount for which judgment of No. 117, January term, 1893, for $2,500 was given. (2.) That both of said judgments are without consideration, collusive, and confessed with intent to hinder, delay and defraud the creditors of Nancy Hogan and Edward Hogan.

T. C. Hipple, Esq., as attorney with H. T. Harvey, Esq., for S. M. McCormick, and as attorney for Everett & Co., and M. H. Parsons, unsecured creditors, joins in the foregoing exceptions and objections stated by Mr. Harvey.

W. H. Clough and C. S. McCormick, Esqs., attorneys for Daniel K. Hogan, deny that any of the parties named, except S. M. McCormick, have standing before this auditor to contest the right of the plaintiffs in judgments No. 97, January term, 1893, and No. 117, January term, 1893, to take of the fund now for distribution so much as may be necessary to pay and satisfy the same if sufficient money shall remain after the payment of prior liens.

The right of Elizabeth Schrœder is denied because the liens under which she claims are all prior in date to the dates of the liens of the two judgments above specified and cannot therefore be affected by the application of any money to the Hogan judgments. No. 61, September term, 1895, having been entered long subsequent to the assignment cannot be heard to contest the Hogan judgment. The principal grounds of complaint are as to the liens of Elizabeth Schrœder, both judgment and mortgage; the judgment of Geo. S. Good, and the judgment of Edward Gallagher and Daniel Hogan.

C. S. McCormick, Esq., in his argument before the auditor requested him to find certain questions of fact as well as conclusions of law. In his brief he does not set forth at whose instance these requests are made. In reply to arguments of attorney for creditors he denies that he appeared as attorney for Edward and Nancy Hogan. The auditor is of the opinion and finds as a fact that C. S. McCormick, Esq., at all the numerous meetings in taking testimony did appear for Edward and Nancy Hogan as well as for Daniel Hogan and several of the

unsecured creditors. This fact is fully substantiated by reference to the notes of testimony. The questions of fact are as follows :

1. In whom was the title of the real estate of the several parcels of land, sold by the assignee, at the time of the assignment, with the amount of money realized by the sale of the respective lands or parcels of land.

2. Upon which tracts or parcels of land were the respective mortgages offered in evidence, liens at the time of the assignment.

3. The date of the assignment and a list of all the liens of mortgages, and judgments at the date of the assignment, and the order of priority of the same.

4. To find as a matter of fact that the evidence offered against the judgment of Edward Gallagher and Daniel Hogan does not show any such fraud or fraudulent intent upon the part either of the assignors or the plaintiffs as must or ought to avoid said judgment, or any part of it.

5. That the only liens against the real estate, the proceeds of which is now for distribution, subsequent to the Gallagher and Hogan judgment and before the assignment, are the judgment of John P. Anthony to No. 118, Jan. term, 1893, and the mortgage of S. M. McCormick, dated Dec. 19, 1892, and recorded in book O, at page 548, and that only one of the holders of said liens is contesting said Gallagher and Hogan judgment.

6. To find that the statement upon which the judgment of Good v. Edward and Nancy Hogan, No. 36, Sept. term, 1892, was entered, is as follows :

" Plaintiff, by his attorney, claims $230.25, balance due on book account for groceries, etc., sold and delivered to defendants. Demand $230.25. Defendants do not appear. On hearing plaintiff's proof, etc., judgment publicly for the plaintiffs and against defendant by default for $230.25, debt, being for necessaries for family and costs of suits. Judgment $230.25."

7. To find that the mortgage of Edward Hogan and Nancy Hogan, dated April 5, 1889, and recorded in book P, page 42 was signed and acknowledged before Jas. H. Ferguson, a notary public at Renovo ; that the amount of the obligations and the character of the same, to be secured by the mortgage were not then written in the mortgage, but the penal sum of $

was written in the mortgage, which has since been changed. That Mrs. Hogan then brought the mortgage to Lock Haven, to the residence of Mrs. Elizabeth Schrœder, where she met Mrs. Schrœder and William; that there, William F. Schrœder, in the presence of Mrs. Schrœder and Mrs. Nancy Hogan, and in the absence of Edward Hogan, and without his knowledge or consent, wrote in the mortgage the following words : " Thirty-six hundred dollars, conditioned that they pay unto the party of the second part, on the fifth day of April, 1892, eighteen hundred dollars with interest, payable semi-annually, together with an attorney's commission of 5 per cent for collection. And this mortgage further collaterally securing judgment note for $1,000, payable on October 17, A. D., 1890, with interest, payable semi-annually."

And further, that in the consideration of the mortgage was originally written the sum of $1,800, which was changed to $2,800 at the same time the filling up of the blank was done.

8. That Edward Hogan was called upon the witness stand by the plaintiffs in the Gallagher and Hogan judgment, and testified that the money with which the property in his own name and that of his wife was purchased was all his earnings, and was given to his wife to be used for the purposes of the family; that upon cross-examination by T. C. Hipple, Esq., attorney for the two Grugan mortgages and others, he testified that he had not signed either the Anderson mortgage assigned to Grugan nor the Grugan mortgage, and that he had never been in the office of the alderman who certifies to the acknowledgment of the said mortgages, that the cross-examination was not upon the same subject-matter as the examination in chief, but the testimony brought out upon the cross-examination is material to the issue before the auditor, which evidence is not contradicted.

To the first, second and third requests the auditor has found substantially as requested. The auditor cannot accede to the fourth request made in the brief, but finds as follows :

That judgment No. 117, January term, 1893, against E. Hogan and Nancy Hogan, in favor of Edward Gallagher and Daniel Hogan, for $2,500, was dated December 12, 1892, entered of record on the same day, and execution issued thereon on the day following. Daniel Hogan was the son and Edward Gal-

lagher was the son-in-law of the defendants. It is nowhere
claimed by the evidence or in the argument of counsel that there
was any indebtedness due jointly to Daniel Hogan and Edward
Gallagher. On the contrary it is actually admitted that the in-
debtedness, if any, was separate and not joint. This note was
given in the front office of S. M. McCormick, Esq., at a time
when he was being consulted and requested to accept the office
of assignee, and upon the eve of an assignment for the benefit
of creditors. It is not claimed, or at least not a fact, that the
amount of this note was determined upon any written evidences
of indebtedness. There were no notes produced at the time,
and no other evidences of indebtedness. It is now claimed that
the plaintiffs in this judgment had given to the Hogan family
at different times checks and money which would aggregate the
amount fixed in the note. But there is no allegation on the
part of either Daniel Hogan or Edward Gallagher that at the
time the money was given there was any promise to repay it. It
was a gift between relatives. There was no promise to repay,
no note taken as an evidence of indebtedness, and in fact no
debt contracted to be paid at the time any of these donations
were made. Daniel Hogan is candid about the matter. He
does not allege that there was any promise to pay any of these
sums at the time they were given. He testified: "I never kept
any account with the exception of what I had in a diary. . . . I
always gave my money to my father and mother until I was mar-
ried. They always said that all would be mine sometime, or
something to that effect. . . . Nothing more than what my
father always told me, that I helped to support the family and
that I would come in for the property. It will be yours. . . .
He always said everything will be yours some day."

Surely this can be given no stronger interpretation than that
the property would be bequeathed to him. It was not such an
agreement or understanding as would substantiate a debt. Then
when we couple with this the fact that Daniel's parents, in 1884
or 1885, deeded a house and lot in Renovo to him, which he
swears was worth about $600, there is good reason to believe
that these payments of money made by him to his parents were
gifts and not loans. On December 2, 1892, he did loan to his
parents the sum of $400, and took a judgment for the same to
No. 97, January term, 1893. This was only ten days before the

giving of the large note, and if his parents owed him at that time a so much larger sum of money he would naturally have taken a judgment for the whole amount, because it was then apparent, or must have been, that his parents were insolvent. This is a circumstance not material in itself, but it goes, as the auditor thinks, to the bona fides of the transaction of the large judgment. In relation to the claim of Daniel Hogan, his father testifies that Daniel frequently gave his mother, Nancy Hogan, money, but says, I don't know whether they were gifts or loans. But he never loaned his father any money excepting $100, unless it might be trifles. Mrs. Nancy Hogan is not called in support of this large judgment.

In regard to the Edward Gallagher portion of this $2,500 judgment the auditor has less difficulty in determining the facts.

It is a fact that there is no satisfactory proof of any indebtedness due to Edward Gallagher that would aggregate one half of the amount of this judgment. Some of the exhibits shown to make up the aggregate of this amount are checks drawn to the order of Edward Hogan, and yet Edward Hogan himself swears positively "I never borrowed any money from Edward Gallagher. I am not indebted to him that I know of."

Mrs. Nancy Hogan is not called to admit this indebtedness, or in any manner explain it. From all the facts and surroundings of this judgment, such as the giving of a judgment note to a son and son-in-law on the eve, and in contemplation of an assignment for the benefit of creditors, when the insolvency of defendants was well understood by all the parties thereto, and upon at most an assumed antecedent indebtedness, which was in fact a gift, and not a loan or debt, for the apparent purpose of entering and enforcing the same before such assignment, and to cover defendants' property; the making of the note by Edward Hogan and Nancy Hogan, jointly, to Hogan and Gallagher, jointly, for an amount evidently calculated to cover the value of the separate properties of Edward Hogan and Nancy Hogan, when not one dollar of joint claim existed, so far as has been shown, of Gallagher and Hogan against Edward and Nancy Hogan, jointly or individually, or one dollar of joint debt by Edward and Nancy Hogan to either Daniel Hogan or E. T. Gallagher; the failure to explain with any show of plausibility how the amount of the judgment note was arrived at, or what items

entered into it; the attempt at the hearing before the auditor to make it cover alleged claims of the wife of E. T. Gallagher, and alleged payments of money to daughters of Edward and Nancy Hogan; the utter inability of Edward and Nancy Hogan to explain the transaction, as well as the almost equal inability of Gallagher and Hogan to explain it; the deliberate attempt, in the face of such facts to enforce the judgment for its entire amount; the assignment by Gallagher to Daniel Hogan, without consideration, and in fact, without the knowledge of Hogan, of Gallagher's alleged interest in said judgment and other similar circumstances surrounding this transaction, which taken and considered together bring the auditor to the conclusion that they constitute such badges of fraud as to make the collusiveness and fraud in this judgment apparent. In this connection it is proper to state that the auditor finds as a fact that the $400 judgment of Daniel Hogan was meant to be included in the larger judgment of $2,500, and that the testimony of S. M. McCormick, Esq., in that particular, is so regarded by the auditor.

As to the request for the fifth finding of fact the auditor agrees with the proposition so far as it goes, but finds further that there are other creditors, who have been designated unsecured creditors, who are contesting the Gallagher and Hogan judgment.

In the matter of the judgment of Geo. S. Good v. Nancy Hogan and Edward Hogan, to No. 36, September term, 1892, the transcript of the alderman shows the claim of plaintiff to be in the words stated in the sixth request of findings of fact.

The evidence taken in relation to the Schrœder mortgage substantially shows what is requested in the seventh finding of facts. Hogan and wife executed and acknowledged a mortgage before James H. Ferguson, a notary public of Renovo, Penna., on April 5, 1889, for a contemplated loan of $1,800, upon a lot of ground owned by Nancy Hogan in her own right. The given name of Schrœder, as well as the penal and just sum were left blank. In no place in the mortgage where an amount was to be filled in, was an amount written by Ferguson, who acted as the scrivener. These blanks were all left to be filled up when the mortgage came to the lender. Mrs. Nancy Hogan brought this mortgage to the residence of Mrs. Schrœder, and there in the presence of Nancy Hogan and Elizabeth Schrœder, and with

the full knowledge and consent of both, William F. Schrœder, Esq., filled in the amounts, terms and conditions of the loan, and it was well understood by all of the parties. It is true that he included a former judgment to be collaterally secured by this mortgage, but that judgment was the first lien against all of the real estate of both Edward and Nancy Hogan, and was at the time an ample security and protection for the former loan of $1,000. In this transaction the auditor finds as a fact there was neither fraud nor wrongdoing of any kind practiced upon the Hogans. It is true that interest for one year at the rate of ten per cent on both the $1,000 loan and the $1,800 loan was deducted from the amount at that time paid or loaned to Mrs. Hogan, but these amounts have been credited on this mortgage and will so appear in the distribution. The interlineation was clearly a mistake of the party filling in the blanks, and has been explained by him to the satisfaction of the auditor. If it had been an intention to change the amount of the mortgage from eighteen to twenty-eight hundred dollars, the same thing would have occurred in filling in the amount on the last page of the instrument where the amount is plainly and clearly "Twenty-eight hundred dollars."

In regard to the eighth or last request of findings of fact, the auditor finds that Edward Hogan was called by C. S. McCormick, Esq., but whether in his own behalf or at the instance of the plaintiffs in the Gallagher and Hogan judgment, the auditor cannot say. Nancy and Edward Hogan and the plaintiffs in that judgment seemed to be so closely connected together through all the hearings that the auditor is unable to separate them in this instance. Surely the fact is lost sight of in this request, that Mr. McCormick did ask Mr. Hogan in chief the question whether he had signed more than one mortgage in the presence of Mr. Stevenson. To this he replied as follows : A. " No sir, nor in the presence of anybody, only the one to Mrs. Schrœder and this," (meaning the Jas. A Wensel mortgage). After this it was that he was cross-examined by Mr. Hipple in regard to the Grugan mortgages. Mr. Hogan was not called by the attorney for the Grugan estate as for cross-examination. In this connection the auditor finds as a fact that at the time of the taking of this testimony of Edward Hogan that Coleman Grugan, the mortgagee and claimant, was dead,

and had been for some considerable time before that. The auditor further finds a payment of $109 as of April 16, 1889, on the judgment of $1,000 held by Elizabeth Schrœder and entered to No. 36, January term, 1894.. . . .

The interest accounted for as due by Elizabeth Schrœder has not been paid by her, but will be deducted from the amount awarded to her by the auditor. The balance of the purchase money due by Daniel Hogan, $2,520, has not been paid by the assignee, but is held subject to the decision of the court as to whether he is a lien creditor, and as such entitled to receipt for the same. It is to be taken as paid for the purpose of distribution only.

### CONCLUSIONS OF LAW.

The law to be applied in this case, and the different propositions made, all seem to be embraced in the points submitted by C. S. McCormick, Esq. To answer and rule on these will dispose of all the questions of law brought up in the distribution. They will be disposed of in their order :

1. That creditors at large, or who had not obtained judgment at the time of the assignment, cannot be heard to charge fraud against a creditor who had judgment.

The auditor does not understand the rule of law to be as broad as it is stated in the request. S. M. McCormick, a lien creditor before the assignment, and the Holloway Bottling Company, Everett & Co., and Elizabeth Schrœder, judgment creditors after the assignment, charge fraud against the judgment of Edward Gallagher and ' Daniel Hogan for $2,500. The rule,- as laid down by Stewart, J., in Wenger's Assigned Estate, 17 Pa. C. C. 203, and the cases there cited, is that " when the law gives creditors the right, for their own protection, to assail fraudulent conveyances made to hinder, delay and defraud them, it has regard to such creditors only as have established their right to participate in the fund or property. In legal proceedings it is never assumed that one man is creditor of another. The law provides a way for the determination of such rights, and the party asserting a claim against another, stands in the attitude of a claimant merely, until in some appropriate judicial proceeding his claim has been established. The process does not create the relation of debtor and creditor, but it declares it, so that it is no longer disputable. Until judg-

ment has been obtained, or a specific lien acquired, it cannot be definitely known that the claimant is a creditor. This, as we understand, is the reason of the rule, which obtains generally restricting the right of contest in such cases to those whose claims are in judgment, or who have a specific lien upon the fund. . . . A creditor by simple contract is within the protection of the statute as much as a creditor by judgment, but until he has a judgment and a lien, or a right to a lien upon the specific property he is not in condition to assert his rights as a creditor."

2. That lien creditors whose liens date prior to the date of the Gallagher and Hogan judgment, and are not affected by any distribution that may be made to the said judgment, are not such interested parties as can be heard to contest the right of said Gallagher and Hogan judgment, to take.

This proposition the auditor agrees to.

3. That in assignments for the benefit of creditors, the assignee stands in the shoes of the assignors, and is their representative, and in no way represents the creditors.

This proposition is also true.

4. That the auditor can only inquire into the question of fraud as to the Gallagher and Hogan judgment, and cannot inquire into the disability of Mrs. Hogan to join in the execution of the single bill, upon which the judgment was entered, so long as she does not complain, or ask that her liability shall be avoided.

There will be no objections to the auditor affirming this point.

5. That the husband is primarily liable for necessaries furnished his household, whether to himself, his wife or children, with or without his knowledge. His wife is not liable unless she expressly undertakes to become so, and her undertaking must appear first in the pleading, and afterwards at the trial it must be established by evidence. In support of this proposition the counsel cites the case of Moore v. Copley, 165 Pa. 294. In this case the court rules the point more on the question of evidence than of pleading. It does not overrule or distinguish the case of Abell v. Chaffee, 154 Pa. 257 where the Supreme Court say: "It is time that the profession throughout the commonwealth should understand and appreciate that both the

rights and liabilities of married women in Pennsylvania have been greatly and radically changed and enlarged by the act of 1887. The authorities which were applicable to questions arising before the passage of that act are entirely inapplicable now. The judgment of a married woman, which was then presumably void, is now presumably valid. It is no longer necessary to such validity to set out on the record the facts which before the act were necessary to give the judgment validity."

The case of Adams v. Grey, 154 Pa. 258, and immediately following the case of Abell v. Chaffee, is even more in point. The judgment of Good v. The Hogans does not show on its face that Nancy Hogan is even a married woman. Upon its face the judgment was perfectly regular and valid. It is doubtful whether a sufficient reason can be shown for opening the judgment, much less for striking it off, which is in effect what the auditor is asked to do.

6. That the mortgage in favor of Elizabeth Schrœder having been changed in material points, and the amount of money and character of obligation inserted in the mortgage, without the consent of Edward Hogan, and without having been agreed upon by him, rendered the said mortgage void.

The auditor having found as a fact that the bond and mortgage of Elizabeth Schrœder was acknowledged and delivered in blank to her, and in the presence of Nancy Hogan filled up as to amount, time of payment, etc., it was not an alteration of the instrument in fact. There are no erasures or alterations in the bond accompanying the mortgage, and the erasure of the amount in every one of the blanks in the mortgage, shows conclusively that it was a clerical error. "A person who offers in evidence a bond with erasures and alterations upon its face, is bound to explain the erasures and alterations to the satisfaction of the jury:" Nesbitt v. Turner, 155 Pa. 429. If this erasure can be termed a material alteration it has been explained to the satisfaction of the auditor. In the recent case of Forster v. Moore, vol. 29, No. 9, National Reporter, 1032, the execution of a mortgage with the consideration in blank at the time the mortgage was executed and delivered to the plaintiff (mortgagee), it was held by the Supreme Court of New York that the plaintiff became the agent for the defendants to fill in the amount, and that as it was not filled up fraudulently, it was a

valid instrument and binding against the mortgagors.  Edward Hogan was not the principal in the mortgage.  It was to become a lien against the separate real estate of Nancy Hogan, and she was present and acquiesced in the amount for which it was given. There was no fraudulent amount inserted in it, and the usury having been credited upon it, it comes exactly within the ruling in the case last cited.

7. That the undisputed evidence in the cause being that the mortgage in favor of John A. Anderson, recorded in book O, page 171, and also the mortgage in favor of Coleman Grugan, recorded in the same book, were neither of them signed or acknowledged by Edward Hogan, they are therefore void.

The auditor finds as a fact that Edward Hogan was not called by or in the interest of Coleman Grugan's estate and was therefore not a competent witness to deny the validity of a lien regular upon its face and upon the records.  Judgment was entered on the Anderson bond, and that judgment stands unattacked and unimpeached.  The only persons competent to do this were Edward and Nancy Hogan, and their only mode was by an application to the court in which the judgment was entered.  These mortgages were duly recorded, and so stand to this day.  Neither Nancy Hogan nor Edward Hogan attacks them, and neither would be competent as witnesses to do so, because of the death of Coleman Grugan.  It is not alleged that either is fraudulent, and therefore they cannot be attacked collaterally.  A mortgage, with duly certified acknowledgment, and duly recorded, cannot thus be collaterally or inferentially attacked or impeached. It is not even argued or intimated that Nancy Hogan had not duly executed and acknowledged these mortgages, and that the mortgagees or one of them, had not received all the money called for therein.  Consequently, these parties are estopped, or at least Nancy Hogan is, from setting up that the mortgages are irregular, or were not properly acknowledged.  Equity will not allow them, or either of them, to receive money and not repay it: Adam v. Mengel, 8 Atl. Rep. 606.

8. That there is no such evidence produced before the auditor as will justify him in declaring the judgment, or any part of it, of Gallagher and Hogan v. The Assignors, fraudulent and void.

The auditor has a right, at the instance of the creditors, to enter into an investigation of the bona fides of this judgment, to

determine whether or not it was collusive and given to cheat, defraud, hinder or delay creditors. If in such a case an issue be not demanded, or be waived, the question whether the judgment was collusive, and therefore void as to creditors defrauded thereby, is a proper one for the auditor's determination. "An auditor is not always bound therefore to distribute to the liens as they appear on the records. A collusive judgment may be attacked before him, and in the absence of a proper application for an issue, that question is one for his determination." This doctrine is laid down in Meckley's Appeal, 102 Pa. 536, and the numerous cases there cited. Also, in Baird's Appeal, 152 Pa. 637. It is doubtless true, as stated by Mr. Justice SHARSWOOD, in Clark v. Douglass, 62 Pa. 415, that a judgment confessed voluntarily by an insolvent or an indebted man for more than is due is prima facie fraudulent within the statute of 13 Elizabeth, C. It follows that the burden of proof is upon defendants and creditors in whose favor such judgment is confessed, to overcome this presumption by competent proof, and show the judgment is not fraudulent. In the present case, this presumption arises against the $2,500 judgment, which was clearly shown to be for more than due, (1) to Gallagher and Hogan jointly, or (2) to either Gallagher and Hogan individually, or (3) to both together for separate or individual accounts. The presumption of a fraudulent judgment was not overcome by any proof, but was in fact rather strengthened. "Although a judgment to cover existing liability, the amount of which is unascertained, may not be fraudulent as to other creditors because of being for more than may actually prove to be owing; yet it may become fraudulent by being sought to be enforced for more than is actually due or owing."

In Werner v. Zierfuss, 162 Pa. 360, it is stated that even where a judgment is given for an actual debt, the question of fraud may arise from additional evidence of something, which may be considered either in itself, or in its connection with the circumstances, a badge of fraud, and "what evidence will be sufficient for that purpose will, of course, depend upon the circumstances of the case. It may be (1) of excess in amount; (2) of inadequate price in a conveyance; (3) of reservation of advantage to the grantor: Bentz v. Rockey, 69 Pa. 71; (4) of giving the debtor a weapon to force other creditors to a com-

promise, as Bunn, Raiguel & Co. v. Ahl, 29 Pa. 387; or (5) the more common case of delaying or hindering them altogether." " The forms and devices of fraud are legion, and it would be vain to attempt to enumerate or define them:" Werner v. Zierfuss, 162 Pa. 360.

The attorney's commission provided for in these claims should be allowed because it was necessary to employ counsel to appear before the auditor and prosecute them as claims against Hogan's assigned estates: Imler v. Imler, 94 Pa. 372.

Having disposed of the questions of law and fact that were raised in the case, the auditor will proceed to make distribution in accordance with such findings. The amount for distribution being more than sufficient to pay the preferred claims, they can be distributed to, in the order of priority but without reference to the particular properties upon which they are liens.

The court, MAYER, P. J., overruled exceptions and confirmed the report.

*Errors assigned* were in overruling exceptions to auditor's report.

*C. S. McCormick*, with him *H. T. Hall* and *W. H. Clough*, for appellants.—The right of the creditors is fixed as of the date of the assignment; each creditor, by the conveyance, becomes the owner in equity of such proportionate part of the property assigned as the debt due him bears to the aggregate of debts; it is as part owners that creditors have standing in court when the distribution comes to be made: Miller's App., 35 Pa. 481; Brough's Est., 71 Pa. 460; Dean's App., 98 Pa. 101.

A creditor by simple contract is not entitled to the interference of a court of equity to prevent the debtor from disposing of his property in fraud of such creditors: Wiggins v. Armstrong, 2 Johns. Ch. 144; Wenger's Assigned Est., 17 Pa. C. C. 203; Rudy's App., 94 Pa. 338; Rhodes v. Cousins, 18 Am. Dec. 716; Shaw's App., 46 Pa. 407; Moran v. Dawes, 14 Am. Dec. 550.

An unauthorized alteration in a bond or mortgage renders the paper invalid: Russell v. Reed, 31 N. W. Rep. 452; Moore v. Bickham, 4 Binn. 4; Gettysburg Bank v. Chisolm, 169 Pa. 571; 2 Rice on Evidence, pp. 1, 364; Nesbitt v. Turner, 155

Pa. 429; Mechling v. Hartzell, 4 Penny. 500; Marshall v. Gougler, 10 S. & R. 164.

The wife is not liable unless she expressly undertakes to become so.  Her undertaking is never presumed, but must be shown affirmatively: Moore v. Copley, 165 Pa. 294; Abell v. Chaffee, 154 Pa. 257.

The Supreme Court will reverse a decree confirming an auditor's report if his conclusions are not warranted by the facts specifically found, or not materially disputed: Jacobs's App., 107 Pa. 138; Miller's App., 102 Pa. 544; Milligan's App., 97 Pa. 525; Babcock v. Day, 104 Pa. 7; Hindman's App., 85 Pa. 466; Livingston v. Hammond, 38 N. E. Rep. 968.

*T. C. Hipple*, with him *H. T. Harvey*, for appellees.—The finding of an auditor upon a question of fact being sustained by the court below, the Supreme Court will not reverse, because the finding might have been the other way, if the evidence was sufficient to sustain the finding: Lewis's App., 127 Pa. 127; Fessenden's Est., 170 Pa. 631; Huckestein & Co. v. Kaufman & Bros., 173 Pa. 199; Kittel's Est., 32 W. N. C. 517; Becker v. Yeager, 1 Pa. Superior Ct. 107.

A judgment confessed voluntarily by an insolvent or indebted man for more than is due is prima facie fraudulent: Clark v. Douglass, 62 Pa. 415; Davis v. Charles, 8 Pa. 82; Werner v. Zierfuss, 162 Pa. 360.

In the distribution of an assigned estate, a simple contract creditor who establishes his claim has standing to attack a judgment given in fraud of creditors: Susong's App., 2 Pa. Superior Ct. 611.

Mortgages and judgments entered prior to the date of the assignment are not affected by the assignment: Golden's App., 110 Pa. 581; Jamison's Est., 163 Pa. 155; Miller's App., 35 Pa. 481.

There is no evidence whatever, nor can it be claimed, that the blanks in this mortgage were fraudulently filled, or that there was any alteration or erasure that is not consistent with the understanding, agreement and intention of the parties. Such being the case, the mortgage is valid: Wiley v. Moor, 17 S. & R. 438; Wessell v. Glenn, 108 Pa. 104; Palacios v. Brasher, 34 Pac. Rep. 251; New England Loan & Trust Co. v. Brown, 59 Mo. App. 461.

The cases of Abell v. Chaffee, 154 Pa. 257, and Adams v. Grey, 154 Pa. 258, cited by the auditor, fully establishes that judgments against married women are now presumably valid, and that it is no longer necessary to set out on the record the facts which before the act of June 3, 1887, were necessary to the validity of the judgment.

PER CURIAM, May 27, 1897:

We find nothing in the record of this case that would justify a reversal or modification of the decree. We are all of opinion that the learned auditor's findings of fact, and conclusions of law are substantially correct, and, for reasons given by him in his report, the decree of the court of common pleas, based thereon, should not be disturbed.

Decree affirmed, and appeal dismissed at appellants' costs.